**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AL-WAHID ALI | Civ. No. 08-2424 (DRD) |
| Plaintiff, | |
| v. | **O P I N I O N** |
| CORRECTIONAL MEDICAL SERVICES, INC., ET AL. | |
| Defendants. | |

*Appearances by:*

AL-WAHID ALI
#435650
Northern State Prison
P.O. Box 2300
Newark, NJ 07114

　　　*Pro Se* Plaintiff

HOLTZMAN & MCCLAIN, P.C.
by:  Stephen D. Holtzman, Esq. and Jeffrey S. McClain, Esq.
524 Maple Avenue, Suite 200
Linwood, NJ 08221

　　　*Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

　　　This matter comes before the Court on two separate motions in which different groups of

Defendants request summary judgment pursuant to Federal Rule of Civil Procedure 56 and on

1

the claims asserted against them by Plaintiff Al-Wahid Ali.[1]  The first group of Defendants (collectively, the "CMS Defendants") is made up of Correctional Medical Services, Inc. ("CMS") – which was previously responsible pursuant to a contract with the New Jersey Department of Corrections ("NJDOC") for providing medical care to the inmates incarcerated at the Northern State Prison ("the Prison") in Newark, New Jersey – and one of its employees, Dr. John Hochberg.  The second (collectively, the "UMDNJ Defendants") is comprised of the University of Medicine and Dentistry of New Jersey ("UMDNJ") and its subsidiary, University Behavioral Healthcare/University Correctional Healthcare ("UBH-UCH"), which assumed responsibility for providing healthcare at the Prison when the contract between CMS and the NJDOC expired on October 1, 2008.  An additional Defendant, Dr. John Godinsky, worked as a physician at the Prison under both CMS and UMDNJ, and is included in the Motions submitted by both groups.  Mr. Ali, who is incarcerated at the Prison, contends that the Defendants violated his rights under the Eighth Amendment and Fourteenth Amendments to the United States Constitution by failing to provide adequate medical care.  On the basis of that allegation, he asserts claims against the Defendants under 42 U.S.C. §§ 1983 and 1988, and seeks declaratory relief pursuant to 28 U.S.C. §§ 2201.

The arguments submitted by the CMS and UMDNJ Defendants in their respective Motions for Summary Judgment are substantially similar.  Essentially, Defendants contend that the undisputed facts as alleged by Mr. Ali are insufficient to rise to the level of "deliberate indifference" necessary to sustain his Eighth and Fourteenth Amendment claims.  Additionally, CMS and UMDNJ argue that even if the acts of their employees constituted deliberate indifference, they cannot be held liable because those acts were not part of a policy or custom of refusing to provide medical care.  Finally, the Defendants argue that Mr. Ali's claims against Dr.

---

[1] Those claims are contained in Count One of Mr. Ali's Second Amended Complaint.

Hochberg and Dr. Godinsky must be dismissed because he failed to exhaust his administrative remedies before asserting those claims in this litigation.

For the reasons set forth below, the Defendants' Motions for Summary Judgment will be granted. Even if true, the allegations set forth in Mr. Ali's Complaint and submissions in connection with the pending Motions are insufficient to bring the Defendants' actions within the realm of "deliberate indifference" necessary to state a claim for denial of medical care. Mr. Ali may disagree with the way he was treated, but that disagreement does not transform the Defendants' actions into constitutional violations. Nor does the fact that Defendants may have committed medical malpractice in failing to treat Mr. Ali's myriad conditions render their conduct actionable as a violation of the Eighth or Fourteenth Amendment in the absence of evidence that their failure to do so was willful or reckless. Therefore, Mr. Ali's 42 U.S.C. §§ 1983 and 1988[2] claims will be dismissed, and his request for declaratory judgment pursuant to 22 U.S.C. § 2201 will be denied.

## I.  BACKGROUND

Mr. Ali suffers from several debilitating medical conditions, including a degenerative disc in the lumbar region of his spine, back and knee injuries, hepatitis B and C with attendant liver damage, diabetes, and hypertension.

In a pro se Complaint filed on February 6, 2008 in the Superior Court of New Jersey, Mr. Ali claimed that CMS violated his rights under the Eighth and Fourteenth Amendments by failing to properly treat those conditions. Specifically, he stated that CMS had failed since 2006 to treat his degenerative disc. Additionally, he claimed that the company had refused to follow

---

[2] 42 U.S.C. § 1988 does not confer substantive rights, but rather allows for the recovery of attorneys' and expert witness fees by a party that prevails in a § 1983 action. Because Mr. Ali's § 1983 claims are not meritorious, he is not entitled to such fees, and his § 1988 claims must be dismissed. For the sake of convenience, the Court will refer for the remainder of this ruling only to Mr. Ali's § 1983 claims.

the recommendation of a neurosurgeon that he undergo back surgery to alleviate his condition. Finally, he argued that CMS staff had required him to leave his cell and climb a flight of stairs to retrieve needed medications, and that as a result of that action he had fallen and suffered torn ligaments in his right knee.  Based on those allegations, Mr. Ali sought $15 million in damages.

Noting the federal nature of Mr. Ali's claims, CMS removed the action to this Court on May 16, 2008.  Two months later, on July 29th of that year, Mr. Ali without seeking prior leave filed a voluminous Amended Complaint in which, in addition to his Eighth and Fourteenth Amendment claims, he included allegations ranging from breach of contract to fraud, conspiracy, and intentional infliction of emotional distress against several new Defendants, including Dr. Hochberg.

On the same day as he filed his Amended Complaint, Mr. Ali submitted an application for pro bono counsel.  The Court denied that application without prejudice on October 14, 2008. In doing so, the Court based its decision partially on the fact that Mr. Ali "is no stranger to litigation.  [He] has been or is currently a plaintiff in ten other federal cases," and was represented by counsel in only one of those actions.

On February 2, 2009, Mr. Ali moved for leave to submit a Second Amended Complaint. Along with that Motion, he submitted another application for pro bono counsel.  While those requests were pending, CMS moved for summary judgment on the claims asserted against it.

In an Order dated August 24, 2009, the Court denied without prejudice Mr. Ali's Motion for Leave to Amend his Complaint.  In order to help clarify the allegations contained in Mr. Ali's Amended Complaint and proposed Second Amended Complaint – both of which were lengthy and included numerous assertions that carried a hint of merit but were legally-deficient in the manner in which they were articulated – the Court granted Mr. Ali's request for pro bono

4

counsel, and on August 27, 2009 appointed an attorney for the limited purpose of assisting him in drafting a new Second Amended Complaint.

Mr. Ali filed his Second Amended Complaint on January 7, 2010.  In it, he abandoned his claims against various former Defendants, but asserted new allegations against the UMDNJ Defendants, Dr. Hochberg, and Dr. Godinsky – none of whom had been named in the earlier iterations of his Complaint.  In light of the similar nature of Mr. Ali's allegations against the various parties, the Court determined that allowing the newly-added Defendants to respond to those allegations before it ruled on CMS's Motion for Summary Judgment would have the desirable effect of consolidating the parties' arguments into a more cohesive form and might contribute to the timely resolution of this dispute.  Therefore, it entered an Order on March 11, 2010 denying CMS's Motion without prejudice and with leave to resubmit within 30 days, and stating that the UMDNJ and other newly-added Defendants could either join in that Motion or separately move for summary judgment within that time period.  As discussed above, the parties chose to move separately; CMS submitted an augmented Motion for Summary Judgment that responded to the new allegations included in Mr. Ali's Second Amended Complaint on behalf of itself, Dr. Hochberg, and Dr. Godinsky, while the UMDNJ Defendants did the same.[3]

The specific allegations contained in Mr. Ali's Second Amended Complaint (which incorporates by reference his original Complaint) assert that Defendants:

> (1) fail[ed] to follow-up on the recommendations of medical consultants concerning the care and treatment of Mr. Ali's back and knees, including a recommendation for surgery;

---

[3] As alluded to above, both Motions include arguments on behalf of Dr. Godinsky, who worked as a doctor at the Prison during the time period before October 1, 2008 when CMS was responsible for providing medical care and continued in that capacity after UMDNJ assumed control.  The CMS Defendants' Motion addresses Mr. Ali's allegations relating to incidents prior to October 1, 2008, while the UMDNJ Defendants' direct their arguments to the purported abuses that occurred after that date.

(2) allow[ed] prescriptions for pain medication to lapse;

(3) allow[ed] medical orders restricting Ali's housing to [the] first floor and lower bunk to lapse;

(4) allow[ed] orders permitting Ali's medicines to be delivered to his cell to lapse; [and]

(5) fail[ed] to take action when Ali filed administrative grievances.

(Second Am. Compl. ¶ 14.)

The Complaint does not specify which of the various Defendants engaged in the aforementioned actions, but rather claims that "each of them," committed each of the alleged offenses outlined above.[4]  (Second Am. Compl. ¶ 14.)

In addition to his general allegations against all Defendants, Mr. Ali claims in his Second Amended Complaint that Dr. Hochberg and Dr. Godinsky each engaged in violations of his Eighth Amendment right to reasonable medical care.  He purports on May 4, 2008 to have overheard the former "tell an aide that Ali was going to die, so why should they spend any money on Ali's care[?]"  (Second Am. Compl. ¶ 15.)  With regard to the latter, Mr. Ali contends that Dr. Godinsky told him on March 26, 2009 that he "would not see a neurosurgeon or receive the back surgery a neurosurgeon had recommended for him until they had dealt with [his] chronic hepatitis."  (Second Am. Compl. ¶ 16.)

In response to the Defendants' argument in their pending Motions for Summary Judgment that the allegations outlined above, even if true, are insufficient to constitute violations of the Eighth and Fourteenth Amendments, Mr. Ali included further allegations in his brief in opposition to those Motions.  Those allegations appear to relate to the claim in his Second

---

[4] The second count of Mr. Ali's Second Amended Complaint alleges that various prison officials violated his constitutional rights by refusing to deliver his mail. Those claims are not at issue in the pending Motions and need not be discussed at this time.

Amended Complaint that the Defendants failed to properly follow up on recommendations that

he undergo back surgery.  Specifically, Mr. Ali alleges that:

> CMS and its employees ignored evidence that a treating physician referred Ali to
> a neurosurgeon. … [T]he Defendants and each of them have ignored previous
> recommendations of medical consultants when [a spine specialist] suggested
> another lumbar epidural steroid injection and repeat MRI scan.

(Pl.'s Br. Opp'n Mot. Summ. J. 2.)

The Defendants contend as a factual matter that Mr. Ali was given epidural steroid

injections and other treatment for his back condition.  (CMS Reply Br. Supp. Mot. Summ. J. 3.)

In fact, CMS submitted medical records showing that Mr. Ali received two epidural injections in

2006 – first on March 29th and again on May 10th.  (CMS Br. Supp. Mot. Summ. J., Ex. B at

980, 990.)  Additionally, the Defendants cite medical records they claim demonstrate that no

specialist ever recommended that Mr. Ali undergo spine surgery.  <u>See</u> (CMS Reply Br. Supp.

Mot. Summ. J. 3.)

With respect to the claims against Dr. Hochberg and Dr. Godinsky, the Defendants cite

various materials that they claim rebut the contention that those individuals were deliberately

indifferent to Mr. Ali's medical needs.  Specifically, the CMS Defendants note that the alleged

statement on which Mr. Ali's claims against Dr. Hochberg are premised was made during an

appointment relating to Mr. Ali's hepatitis.  They then claim that, since that malady and Mr.

Ali's request for an immediate liver transplant were the subject of a separate action in which

another judge of this Court granted summary judgment in favor of CMS – and ruled that the

company and its employees provided "substantial medical treatment based on sound professional

judgment" – Mr. Ali's claims against Dr. Hochberg are barred by res judicata.  (<u>Id.</u> at 2, n.2)

(citing <u>Ali v. CMS</u>, Civ. No. 08-2425, slip. op. at 12 (D.N.J. Sept. 11, 2009)).  Similarly, the

Defendants contend that Dr. Godinsky provided appropriate medical care, noting that he met

with Mr. Ali only twice, on January 8, 2007 and March 26, 2009, and ordered x-rays and

prescribed various medications after the first of those meetings.

      As a final rebuttal to Mr. Ali's claims that his medical care was inadequate, the CMS

Defendants submitted an expert report by Dr. Joshua Branch of Jefferson Medical College.  Dr.

Branch concluded that:

> After careful review of the records, there is nothing to indicate that CMS or its
> physicians deviated from the standard of care expected of primary care physicians
> or acted with deliberate indifference towards Mr. Ali.  Mr. Ali went through an
> appropriate work-up and treatment for his chronic back pain.  An MRI revealed
> <u>no</u> significant central canal stenosis.  On 4 separate occasions, Mr. Ali underwent
> neurosurgical evaluation (5/04, 6/04, 4/05, and 10/05).  At each visit there was no
> evidence of neurological deficit on physical examination, and therefore no
> indication to pursue any type of surgical intervention for this pain.

(CMS Br. Supp. Mot. Summ. J., Ex. K at 13-14.)

## II. DISCUSSION

      The pending Motions are styled as requests for summary judgment pursuant to Federal

Rule of Civil Procedure 56(c), and the Court must apply the standard of review applicable to

such requests.  Under that standard, summary judgment is proper where "there is no genuine

issue as to any material fact and … the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on

which a reasonable jury could find for the non-moving party."  <u>Kaucher v. County of Bucks</u>, 455

F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the

outcome of the suit under governing law."  <u>Id.</u>  Disputes over irrelevant or unnecessary facts will

not preclude a grant of summary judgment.

      The party moving for summary judgment has the burden of showing that no genuine

issue of material fact exists.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  When the

moving party does not bear the burden of proof at trial, the moving party may discharge its

burden by showing that there is an absence of evidence to support the non-moving party's case.

Id. at 325.  If the moving party can make such a showing, then the burden shifts to the non-

moving party to present evidence that a genuine fact issue exists and a trial is necessary.  Id. at

324.  In meeting its burden, the non-moving party must offer specific facts that establish a

material dispute, not simply create "some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and

their reasonable inferences in the light most favorable to the non-moving party.  Pa. Coal Ass'n

v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the

evidence and rule on the truth of the matter, but rather to determine whether there is a genuine

issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If there are no issues

that require a trial, then judgment as a matter of law is appropriate.  Id. at 251-52.

## A.  "Deliberate Indifference" Standard

In order to state a cognizable claim under 42 U.S.C. § 1983 for denial of Eighth and

Fourteenth Amendment rights to reasonable medical care, a prisoner must allege more than mere

negligence on the part of the individuals responsible for his or her medical care.  "Medical

malpractice does not become a constitutional violation merely because the victim is a prisoner."

Estelle v. Gamble, 429 U.S. 97, 106 (1976).  "Thus, a complaint that a physician has been

negligent in diagnosing or treating a medical condition does not state a valid claim of medical

mistreatment."  Id.  To the contrary, a prisoner asserting a § 1983 claim for denial of medical

care "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to

serious medical needs."  Id.

"To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 328 (3d Cir. 2009) (citing Estelle, 429 U.S. at 104-05 (1976)).  That standard requires "subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk" to an inmate's health and consciously disregard that risk in order to be held liable.  Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer v. Brennan, 511 U.S. 825, 837-38 (1994)).  "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute" deliberate indifference.  Estelle, 429 U.S. at 105-06.  While prison officials may be held liable for "intentionally denying or delaying access to medical care," id. at 104, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex. rel Walker v. Fayette County, Pa., 599 F.2d 573, 575 n.2 (3d Cir. 1979).  "[P]rison authorities are afforded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).  "There may … be several ways to treat an illness," and the decision of a prisoner's physicians to opt for one reasonable method over another does not give rise to an Eighth Amendment claim.  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  A medical decision not to order specific diagnostic tests is "a classic example of a matter for medical judgment," and cannot form the basis for a claim of deliberate indifference.  Estelle, 429 U.S. at 107 (discussing physician's decision not to conduct an x-ray on a prisoner who had

suffered a back injury).  Similarly, the Court of Appeals for the Third Circuit has ruled that refusal to provide a given drug or method of treatment does not constitute deliberate indifference.  Walker, 599 F.2d at 575 (discussing refusal of prison authorities to provide methadone to an inmate undergoing withdrawal from heroin despite the fact that inmate displayed symptoms over a period of ten days and requested the former drug).

### B.  Mr. Ali's Claims

Under that standard, Mr. Ali's Eighth and Fourteenth Amendment claims must fail.  Even putting aside the factual evidence that the care he received was adequate – including his medical records and the expert report submitted by CMS – and assuming the veracity of Mr. Ali's allegations, the Defendants' actions were not sufficiently egregious to sustain his constitutional claims.  To the contrary, Mr. Ali's own allegations reveal that the Defendants provided extensive medical treatment, including multiple appointments with specialists and other examinations, prescription drugs, MRIs and other diagnostic tests, and administrative orders tailoring the terms of his confinement to his weakened condition by requiring that he be housed on the first floor and that his medication be delivered.  While the Defendants may have discontinued those activities at various times during the period relevant to his claims, Mr. Ali has failed to present expert testimony or any other evidence from which a jury could conclude that their actions in doing so were not justified by sound medical judgment.  Nor has he shown that those actions – even if they fell below the applicable standard of medical care – were willful or reckless rather than the result of inadvertent malpractice.

An examination of the general assertions made against all Defendants in Mr. Ali's Second Amended Complaint is illustrative of the deficient nature of his claims.  The first of those allegations – that the Defendants "fail[ed] to follow-up on the recommendations of medical

consultants concerning the care and treatment of [his] back and knees, including a recommendation for surgery," (Second Am. Compl. ¶ 14) – is "a classic example of [the type of] matter for medical judgment" that cannot be used to sustain a deliberate indifference claim. Estelle, 429 U.S. at 107.  It is well-established that "no claim is stated when a doctor disagrees with the professional judgment of another doctor."  White, 897 F.2d at 110.  Thus, the fact that one consultant may have recommended that Mr. Ali undergo surgery did not require the Defendants to pursue that method of treating his lumbar condition.  In the absence of evidence that the Defendants' decision to refuse Mr. Ali's requests for surgery was unjustified and was the result of either a willful design to inflict unnecessary pain or a reckless disregard of that possibility – evidence that Mr. Ali has utterly failed to present – that decision cannot form the basis for a deliberate indifference claim pursuant to the Eighth and Fourteenth Amendments.

Mr. Ali's second, third, and fourth assertions – that the Defendants "allow[ed] prescriptions for pain medication to lapse," "allow[ed] medical orders restricting Ali's housing to [the] first floor and lower bunk to lapse," and "allow[ed] orders permitting Ali's medicines to be delivered to his cell to lapse" (Second Am. Compl. ¶ 14) – are similarly deficient.  There is no evidence as to why Mr. Ali's housing restrictions, prescriptions, or provisions for the delivery of medication were discontinued.  Without such evidence, a jury would be left to speculate as to whether those developments were the result of (1) a medical judgment on behalf of the Defendants that Mr. Ali's condition had improved to the point that such restrictions and medication were no longer necessary, (2) mere inattentiveness and failure to properly monitor his treatment, or (3) a willful or reckless disregard of his needs.  In short, there is no information in the record that would support an inference that those developments were "deliberate" rather than the result of mere "indifference."  As is implied by the term commonly used to describe Mr.

Ali's Eighth and Fourteenth Amendment claims – "deliberate indifference" – a prisoner must demonstrate both in order to maintain an action for denial of medical care. Estelle, 429 U.S. at 105-06 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute" deliberate indifference.).

Nor can Mr. Ali's final assertion of wrongdoing on the part of all Defendants – that they "fail[ed] to take action when [he] filed administrative grievances," (Second Am. Compl. ¶ 14) – form a basis for his Eighth and Fourteenth Amendment claims. Mr. Ali's administrative grievances argued that he should have been given various medications and access to surgery. In other words, they sought to overrule the medical judgments of his doctors. A prisoner's mere disagreement with his physicians' judgments cannot form the basis of a deliberate indifference claim. See, e.g., White, 897 F.2d at 110 ("There may ... be several ways to treat an illness," and the decision of a prisoner's physicians to opt for one reasonable method over another does not give rise to an Eighth Amendment claim); Walker, 599 F.2d at 575 (ruling that refusal to provide a given drug or method of treatment does not constitute deliberate indifference). Therefore, Mr. Ali's contention that the Defendants violated his Eighth and Fourteenth Amendment rights by failing to properly respond to his various administrative grievances is unavailing.

Mr. Ali's more specific allegations of wrongdoing on the part of Dr. Hochberg and Dr. Godinsky must also be rejected as a basis for his § 1983 claims. Mr. Ali's claim against the latter is premised wholly on the fact that Dr. Godinsky told him during an appointment on March 26, 2009 that he "would not see a neurosurgeon or receive the back surgery a neurosurgeon had recommended for him until they had dealt with [his] chronic hepatitis." (Second Am. Compl. ¶ 16.) Mr. Ali presents no evidence that Dr. Godinsky's decision to prioritize treating his hepatitis over his back condition was not medically reasonable, and as discussed above, his mere

disagreement with that decision cannot form the basis of an Eighth or Fourteenth Amendment claim.  See, e.g., White, 897 F.2d at 110; Walker, 599 F.2d at 575.

 While Mr. Ali's claims against Dr. Hochberg are more troubling, they must also be rejected.  The Defendants have presented unrebutted evidence that the statement on which Mr. Ali premises his action against Dr. Hochberg – in which he allegedly "t[old] an aide that Ali was going to die anyway, so why should they spend any money on Ali's care[?]" – was made in connection with an appointment relating to Mr. Ali's hepatitis.  During that appointment, Mr. Ali requested an immediate liver transplant.  After Dr. Hochberg rejected his request, Mr. Ali brought a separate § 1983 action against CMS.  Another judge of this Court granted summary judgment and dismissed that action on September 11, 2009.  See Ali v. CMS, Civ. No. 08-2425 (D.N.J. Sept. 11, 2009).  In doing so, the Court found that CMS and its employees provided "substantial medical treatment based on sound professional judgment."  Id. at 12.  While it does not appear that Mr. Ali raised the specific statement by Dr. Hochberg on which he now attempts to base his claim in that case, he could have done so prior to the Court's ruling.  Therefore, any claims based on that statement are barred by res judicata.  See, e.g. Allen v. McCurry, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 194 (3d Cir. 1999) (The doctrine of res judicata "gives dispositive effect to a prior judgment if a particular issue, although not litigated could have been raised in the earlier proceeding.") (emphasis in original).

14

**III.  CONCLUSION**

For the reasons set forth above, the Defendants Motions for Summary Judgment are granted, and the claims contained in Count One of Mr. Ali's Second Amended Complaint are dismissed with prejudice.

The Court will enter an Order implementing this Opinion.


 **s/ Dickinson R. Debevoise _____ _____**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  June 10, 2010